UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SKYVENTURE ORLANDO, LLC, f/k/a
Skyventure Partners, LLC;

    Plaintiff,

-vs-                 Case No. 6:09-cv-396-Orl-19KRS

SKYVENTURE MANAGEMENT, LLC;
SKYVENTURE, LLC; SKYGROUP
INVESTMENTS, LLC; THE
INTERNATIONAL BODYFLIGHT
ASSOCIATION, LLC;

    Defendants.
_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss First Amended Complaint or Alternatively, Motion for More Definite Statement and Incorporated Memorandum of Law by SkyVenture, LLC, SkyGroup Investments, LLC, The International Bodyflight Association, LLC, and Skyventure Management, LLC (Doc. No. 28, filed June 22, 2009); and

2. Response in Opposition to Motion to Dismiss First Amended Complaint or Alternatively, Motion for More Definite Statement and Incorporated Memorandum of Law filed by Skyventure Orlando, LLC (Doc. No. 31, filed July 16, 2009).

## Background

This case arises from a soured business relationship between an investor and a group of affiliated companies that sell "indoor skydiving" business opportunities. The investor, Mr. Marc Laurie, is the principal of Plaintiff Skyventure Orlando, LLC ("SVO"). SVO has sued Defendants

SkyVenture LLC, SkyGroup Investments, LLC ("SGI"), SkyVenture Management, LLC ("SVM"), and The International Bodyflight Association, LLC ("IBA"), alleging twelve counts: (1) a request for a declaratory judgment that Defendants' business enterprise is a "franchise" under Florida, California, and federal law, (Doc. No. 9 ¶¶ 72-80); (2) a request for a declaratory judgment that Plaintiff is permitted to use the trademark "IFLY" and several derivatives, (*id.* ¶¶ 81-86); (3) a request for a declaratory judgment that Plaintiff is permitted to use two domain names, <iflyflorida.com> and <iflyorlando.com>, (*id.* ¶¶ 87-91); (4) a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-13 (2008), (Doc. No. 9 ¶¶ 92-99); (5) a violation of the Florida Franchise Act, Fla. Stat. § 817.416 (2008), (Doc. No. 9 ¶¶ 100-02); (6) rescission of a purchase and license agreement, (*id.* ¶¶ 103-07); (7) civil conspiracy, (*id.* ¶¶ 108-11); (8) breach of representations and warranties, (*id.* ¶¶ 112-15); (9) breach of contract, (*id.* ¶¶ 116-19); (10) breach of the covenant of good faith and fair dealing, (*id.* ¶¶ 120-26); (11) tortious interference, (*id.* ¶¶ 127-31); and (12) unjust enrichment, (*id.* ¶¶ 132-38). As a remedy, Plaintiffs seek an array of damages and injunctions. (*Id.* at 37-41.) In response, Defendants have moved to dismiss. (Doc. No. 28.)

The Amended Complaint contains twenty-eight pages and seventy-one paragraphs of background information, but the facts pertinent to the current issues before the Court may be summarized briefly.[1] In 1997, Defendant SkyVenture LLC's predecessor-in-interest built its first indoor skydiving wind tunnel in Orlando, Florida. (Doc. No. 9 ¶ 12.) Afterwards, "Defendants"[2]

---

[1] The allegations of the Amended Complaint are summarized for contextual purposes only. The Court's recitation of facts should not be interpreted as commentary on the disputed issue of whether Defendants are franchisors under federal and state law.

[2] Plaintiff uses the generic term "Defendants" to describe anywhere from two, three, (continued...)

used the success of this location to solicit investors to open new locations. (*Id.* ¶ 13.) In August of 2002, "Defendants" formed SVO, the LLC that is now the Plaintiff in this action, for the purpose of owning the initial Orlando franchise of their indoor skydiving concept. In March of 2003, "Defendants" formed Defendant SGI to serve as a holding company for various assets. "Defendants" later transferred their interest in SVO to SGI. (*Id.* ¶ 15.)

During 2003, "Defendants" began soliciting investors to build a wind tunnel franchise in Las Vegas, Nevada. (*Id.* ¶ 17.) They initially sold this franchise to an investor named Paul Marzano. (*Id.* ¶¶ 17-19.) In late 2003 or early 2004, Mr. Lurie learned of Defendants' business in the course of making loans to a skydiving drop zone business located in San Diego, California. (*Id.* ¶ 22.) Lurie soon began discussing with Defendants' principal, Mr. N. Alan Metni, the possibility of opening a SkyVenture franchise in the San Diego area. (*Id.* ¶ 23.) During this time, Lurie had no prior experience with the operation of a wind tunnel or indoor skydiving facility. (*Id.* ¶ 24.) In early to mid-2004, Mr. Metni and SkyVenture LLC provided to Mr. Lurie at least thirty separate promotional documents which are labeled in the Amended Complaint as the "Marketing Materials." These documents included a draft business plan, projections of earnings, projections of costs, and an explanation of the support to be provided by "Defendants." (*Id.* ¶ 25.) Unbeknownst to Lurie at the time, the Marketing Materials contained multiple misrepresentations. (*Id.* ¶ 28.)

In the course of soliciting Mr. Lurie's investment for a San Diego franchise, "Defendants" persuaded Mr. Lurie to open franchises in Ontario, California and Hollywood, California. (*Id.* ¶¶

---

[2](...continued)
and four of the Defendants at a time. The Court will do the same here because it is impossible to tell in most instances from the Amended Complaint which Defendants are responsible for which actions.

32-34.) Mr. Lurie also invested in the already-existent Las Vegas franchise, eventually becoming a co-owner of it. (*Id.* ¶¶ 35-36.) Around this same time, in fall of 2004, Mr. Lurie and Mr. Metni began discussing the possible sale of SVO and, along with it, the Orlando franchise. (*Id.* ¶ 38.) Some time later, delays, construction-cost overruns, and other issues arose with the Las Vegas and Ontario franchises, causing Mr. Lurie to demand that "Defendants" return his deposits. Mr. Metni refused; however, he agreed to return all but $182,380 if Lurie went forward with the purchase of SVO. While making this proposal, Metni represented that the success of the Orlando location would compensate Lurie for the losses associated with the Las Vegas and Ontario locations. (*Id.* ¶ 40.)

On July 25, 2005, Mr. Lurie, through his California LLC, SkyVenture Partners, entered into an agreement with Defendant SGI to purchase a 100% membership interest in SVO. (*Id.* ¶ 42.) Under the purchase agreement, SVO was subject to the terms and conditions of a separate license agreement. (*Id.* ¶ 44.) The license agreement was executed between SVO and SkyVenture LLC before the sale of SVO and signed on both LLCs' behalf by Mr. Metni. (*Id.* ¶ 45.) In the course of soliciting Lurie's purchase of SVO, "Defendants made material misrepresentations to Plaintiff and omitted material facts in the Marketing Materials and in oral representations to [Lurie], in order to induce Plaintiff to purchase SVO." (*Id.* ¶ 47.) Generally, these misrepresentations concerned the size, rate of growth, and revenue potential of the indoor-skydiving market; in other words, "Defendants" misrepresented the viability of their franchise concept. (*Id.* ¶¶ 48-54.) The Amended Complaint lists a number of specific inaccuracies and omissions but, with one exception, does not specify the party making the statement, the means by which the statements were made, and the specific time period in which the statements were made. The single exception is the allegation

regarding Article 3 of the purchase agreement, a provision which Plaintiff states was false because it warranted that the agreement complied with all legal requirements. (*Id.* ¶ 62.)

After the sale of SVO to SkyVenture Partners, "Defendants" began acting "abusively, unfairly, and deceptively in dealing with Plaintiff." (*Id.* ¶¶ 55.) For instance, "Defendants" solicited SVO's lead instructor to work at a different facility, later decertified the replacement instructor, and then, due to the lack of certified instructors at the Orlando facility, forced SVO to pay "Defendants" tens of thousands of dollars to train SVO's staff. (*Id.*) "Defendants" also refused to address the various technical support needs of SVO. (*Id.*)

For one year following the sale of SVO, Defendants, pursuant to the purchase agreement, maintained near total control over SVO's management. (*Id.* ¶ 57) Afterwards, "Defendants" still maintained significant control over SVO in accordance with the license agreement. For example, under this agreement, "Defendants" must approve the products and services for sale, the types of equipment used, accounting practices, and changes to senior management. (*Id.* ¶ 58.)

In addition, Plaintiffs allege that "Defendants" are responsible for misconduct regarding several trademarks. Under the license agreement, SVO obtained the rights to use the trademark "SKYVENTURE" and derivative and related marks. (*Id.* ¶ 63.) In connection with the purchase of SVO, Mr. Metni represented that SkyVenture LLC[3] was developing a substitute mark for "SKYVENTURE" which SVO would be permitted to use. (*Id.* ¶ 64.) However, after developing the mark "IFLY," Mr. Metni refused to allow Plaintiff to use it or any derivative unless Plaintiff paid a separate license fee. (*Id.* ¶ 67.) Further, once Metni learned that SVO wished to use the mark, and

---

[3] The Amended Complaint states that "SV" intended to develop a substitute trademark. (Doc. No. 9 ¶¶ 64-67.) This is the only part of the Amended Complaint where the acronym "SV" is used. The context suggests that SV is meant to refer to SkyVenture LLC.

particularly derivative marks related to the Orlando location, he transferred the mark from Defendant SkyVenture LLC to Defendant SVM and then sought federal trademark registration for the specific marks of "IFLY ORLANDO" and "IFLY FLORIDA." (*Id.* ¶ 68.) Metni threatened to sue SVO if it used the marks. (*Id.* ¶ 70.)

### Standard of Review

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ___, 127 S. Ct. 2499, 2509 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 127 S. Ct. at 2509 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing

*Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

**I.     General Pleading Matters**

In the Amended Complaint, Plaintiff uses the generic label "Defendants" to describe actions taken by some, but not all, of the Defendant LLCs. Plaintiff appears to conflate the identities of these legally distinct LLCs based on a belief that all four are controlled by a single principal, Mr. N. Alan Metni. (Doc. No. 9 ¶¶ 4-7.) However, there are no allegations that Mr. Metni or any of the specific Defendant LLCs are liable under a veil-piercing theory, such that it would not matter which exact LLC Plaintiff dealt with on particular occasions. In other words, Plaintiff offers no justification for treating the four LLCs as a single entity.

This method of pleading causes substantial confusion and violates Federal Rules of Civil Procedure 8(a) and 10(b). *E.g.*, *Washington v. Bauer*, 149 F. App'x 867, 871 (11th Cir. 2005). Plaintiff must re-draft the Amended Complaint to specify the particular Defendant LLC or LLCs responsible for particular allegations of conduct. Plaintiff may use the generic term "Defendants"

(with no specification) only when all four Defendants are responsible for a given action. The Court recognizes that identifying the specific LLC responsible for each action listed in the Amended Complaint may pose some practical difficulty, but that is the burden a plaintiff faces when suing four legally distinct defendants. *See* Fed. R. Civ. P. 10(b).

A related, but equally important, problem is Plaintiff's failure to allege fraud with sufficient particularity. For the reasons stated Section IV below, the Court cannot ascertain whether the allegations of fraud are part of any particular count. Nevertheless, the inclusion of such allegations suggests that they are probably meant to form some part of some claim, and if that is the case, Plaintiff must comply with the Eleventh Circuit's case law regarding the pleading of fraud with particularity. Although Plaintiff pleads the existence of specific misrepresentation and omissions, it fails to specify the party responsible for each statement, the means by which that statement was communicated, and the time period in which the statement was made. *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). Accordingly, the allegations violate Federal Rule of Civil Procedure 9(b) and must be re-pled.

## II. Count I: Declaratory Relief Regarding Franchise Laws

In Count I, Plaintiff seeks a declaratory judgment that Defendants are subject to state and federal laws and regulations governing the relationship between franchisors and franchisees. Plaintiff explains that "an actual case or controversy exists between these parties concerning the propriety and enforceability of certain agreements entered into between Plaintiff and Defendants." (*Id.* ¶ 80.)

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "cases or controversies." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339

(11th Cir. 2000) (citing *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998)). To enforce this limitation, the doctrine of standing requires that the plaintiff show, among other things, that he or she has suffered an "injury in fact – some harm to a legal interest that is actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted) (quoting *Leahy*, 145 F.3d at 1244; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff has standing to seek the specific remedies of declaratory or injunctive relief only when he "allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Id.* (quoting *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346-47 (11th Cir. 1999) (alteration by *Bowen* court)); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Each of these cases demonstrates what we have said many times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." (citations and internal marks omitted)).

Plaintiff explains that it seeks a declaration that the contracts are void, but it does not specify whether it is in danger of being sued for breach if such a judgment is not rendered. (Doc. No. 9 ¶ 80.) In fact, there are no allegations suggesting even the potential of "immediate harm" to Plaintiff. Rather, Plaintiff appears to seek the freedom to void the contracts in light of Defendants' alleged violation of several franchising laws. Thus, Count I seeks exactly what is impermissible: an advisory opinion about the status of Plaintiff's relationship with Defendants. *Bowen*, 233 F.3d at 1340 (declining to issue a declaratory judgment that an arbitration agreement was invalid because the plaintiff could not demonstrate that it would violate the applicable law and, further, that litigation was imminent); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 249405, at *3 (S.D. Fla. June 18, 2008) (declining to issue a declaratory judgment that a co-

insurance provision was void absent any demonstration of an imminent future injury). Accordingly, this Court lacks subject matter jurisdiction over Count I.[4]

## III. Counts II & III: Declaratory Judgment Regarding Trademark and Domain Name Rights

Counts II and III seek a declaratory judgment that Plaintiff is permitted to use the trademark "IFLY" and several domain names featuring the mark. In response, Defendants argue that the "IFLY" mark cannot be a substitute or derivative mark of "SKYVENTURE" as a matter of law. Plaintiffs respond that the comparison of a trademark and its substitute is inappropriate at this stage of the litigation. The Court agrees. Defendants have presented only one sentence of argument on this issue, and their point is not self-evident. Although the marks are dissimilar in form, the Court cannot conclude, as a matter of law, and without adequate briefing or an understanding of the factual context, that "IFLY" could not be interpreted as a substitute or derivative of "SKYVENTURE." *See Superchips Inc. v. Street & Performance Elecs.*, No. 6:00-CV-896-ORL31KRS, 2001 WL 697948, at *5-6 (M.D. Fla. 2001) (explaining the concept of a derivative work in the copyright context).

## IV. Counts IV, V, VI, VII, VIII, IX, and XII

Counts IV through IX and XII assert a variety of claims: a violation of the FDUTPA; a violation of the Florida Franchise Act; rescission of the purchase and license agreement; civil conspiracy; breach of representations and warranties; breach of contract; and unjust enrichment.

Defendants present a number of arguments why these counts should be dismissed. However, the Court is unable to address such substantive issues of law because Plaintiff has pled these seven

---

[4] The contrast between Counts I and II is particularly illustrative. In Count II, Plaintiff asks for a declaratory judgment that it is permitted to use several trademarks. (Doc. No. 9 ¶ 83.) Defendant SVM had expressly threatened to sue Plaintiff if it used these trademarks. (*Id.* ¶¶ 70, 83.)

Counts in a manner that falls squarely within the Eleventh Circuit's repeated condemnation of "shotgun pleadings." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-80 & n. 54 (11th Cir. 2008) (explaining that the Eleventh Circuit has, "since 1985[,] . . . explicitly condemned shotgun pleadings upward of fifty times"). Such pleadings typically assert a laundry list of counts, each incorporating a glut of background information. *Id.* at 980; *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 (11th Cir. 2002); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). In addition, these pleadings often fail to specify which claims are brought against which defendants. *E.g.*, *Magluta*, 256 F.3d at 1284. The result is confusion, both for the defendant in trying to frame a responsive pleading and for the court in trying to determine the scope of the plaintiff's claims. *Davis*, 516 F.3d at 982; *Strategic Income Fund, LLC*, 305 F.3d at 1295 n. 10. The Eleventh Circuit has instructed courts to *sua sponte* strike a pleading that falls within this category. *Magluta*, 256 F.3d at 1284-85.

Counts IV through IX and XII contain the hallmarks of a shotgun pleading. For instance, each Count incorporates all seventy-one paragraphs of background information. Although incorporation by reference is a common pleading mechanism, *see* Fed. R. Civ. P. 10(b), it causes substantial confusion in this case because, in these seven Counts, Plaintiff provides absolutely no description of what conduct in the incorporated paragraphs constitutes the conduct supporting the cause of action. The omission becomes particularly troublesome with respect to the FDUPTA claim; the Amended Complaint alleges a wide range of wrongful conduct over several years, involving several different investments, but there is no way to tell what conduct is supposed to fall within the scope of the claim and what is not. An equally troublesome example is Count XII. This Count asserts, in the alternative, a quasi-contract claim based on a theory of unjust enrichment. However,

at the same time, it incorporates all seventy-one paragraphs of background information. The facts in the incorporated paragraphs establish the existence of a contract, thereby nullifying the possibility of an quasi-contract action based on those facts. Further, the Court cannot ascertain whether Federal Rule of Civil Procedure 9(b) applies to this action, because it is not clear that the allegations of fraud are meant to be part of any of particular Count.

As a result of these errors, the Court lacks even a starting point to begin the legal analysis posed by Defendants' Motion to Dismiss. Thus, the Court will dismiss these Counts with instructions to replead in a manner that complies with the Eleventh Circuit's case law prohibiting shotgun pleading.

## V. Count X: Breach of Covenant of Good Faith and Fair Dealing

Defendants argue that Count X, in conjunction with Count IX, must be dismissed for failure to identify "the contract provisions that allegedly were breached or the conduct that constituted any breach." (Doc. No. 28 at 21.) Unlike Count IX, however, Count X actually does identify four contractual duties that were not performed in good faith.[5] (Doc. No. 9 ¶ 122.) In this respect, Count X contains sufficient factual allegations to satisfy applicable pleading standards.

## VI. Count XI: Tortious Interference

Plaintiff bases its claim of tortious interference on two aspects of Defendants' conduct: (1) during the period while the license agreement was in effect, Defendants interfered with the employment and certification of Plaintiff's flight instructors; and (2) Defendants interfered with Plaintiff's relationship with a vendor called Kemco, resulting in Kemco's refusal to manufacture

---

[5] To the extent Plaintiff is basing this Count on contractual duties not specified in paragraph 122, Plaintiff must specify these duties in the Second Amended Complaint.

components needed to operate Plaintiff's business. (*Id.* ¶¶ 129-30.) Defendants argue that the Count should be dismissed because Plaintiff has not alleged that Defendants were "strangers" to either business relationship and, second, both business relationships appear to be at will. (Doc. No. 28 at 22.) Plaintiff responds that its claim is cognizable because it was provided with "legal rights" as a franchisee. (Doc. No. 31 at 19-20.)

An initial problem with this Count is that it lacks factual allegations in support of Defendants' alleged interference with Kemco. Paragraph 130 is the only place in the Amended Complaint in which Plaintiff mentions Kemco by name. However, the paragraph contains nothing more than the type of bare legal conclusions that courts are instructed to ignore. *Iqbal*, 129 S. Ct. at 1949. Paragraph 55(h) states that Defendants "interfered" with vendors, but the paragraph fails to specify the vendor or the method of interference. In this sense, it is even less illustrative than paragraph 130. Accordingly, Count XI must be limited to a claim based solely on Defendants' alleged interference with Plaintiff's employment of flight instructors.[6]

Turning to the substance of Plaintiff's claim, Florida law recognizes a claim for tortious interference with contract only when the alleged interference is directed at a business relationship to which the defendant is not a party. *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (citing *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986); *Ethyl v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980)). "In other words, 'the interfering defendant must be a third party, a stranger to the business relationship.'" *Id.* (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999); *Abruzzo v.*

---

[6] Paragraph 55(a)-(b) explains that Defendants poached one of Plaintiff's flight instructors and then stripped the replacement instructor of his certifications and ratings, effectively forcing Plaintiff to rely on Defendants to train its employees.

*Haller*, 603 So. 2d 1338 (Fla. 1st DCA 1992)). For instance, if the defendant is contractually given discretion to approve or disapprove a transaction, the plaintiff cannot assert a claim based on tortious interference for exercising such discretion, even if the defendant's actions were wrongful in some respect. *See Genet Co.*, 498 So. 2d at 684-85.

In this case, the Defendants were involved with the employment agreements between Plaintiff and the instructors. As the Amended Complaint explains, the Defendants initially exerted "nearly total control" over SVO's business and, after the first year of business, "significant control over" the staffing levels and the certification of instructors. (Doc. No. 9 ¶¶ 57, 58.) Although the Amended Complaint is ambiguous as to when the alleged interference occurred, in both time periods Defendants were not "strangers" to these business relationships within the plain meaning of the word. Thus, even if Defendants' actions were wrongful, they did not constitute tortious inference with a business relationship. Accordingly, Plaintiff may not rely on a claim of tortious inference to remedy Defendants' alleged wrongdoing.[7]

## Conclusion

Based on the foregoing, the Motion to Dismiss First Amended Complaint or Alternatively, Motion for More Definite Statement and Incorporated Memorandum of Law by SkyVenture, LLC, SkyGroup Investments, LLC, The International Bodyflight Association, LLC, and Skyventure Management, LLC (Doc. No. 28, filed June 22, 2009) is **GRANTED in part and DENIED in part**:

1.  Count I is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

---

[7] Because Defendants were not "strangers" to the business relationships, the Court need not address whether the instructors were at-will employees and, further, whether that employment status would preclude a tortious interference claim.

2. Counts IV, V, VI, VII, VIII, IX, and XII are **DISMISSED without prejudice** with instructions to replead in manner that complies with the Eleventh Circuit's case law prohibiting shotgun pleadings.

3. Count XI is **DISMISSED without prejudice** as to the repleading of the Count in a manner that states a claim upon which relief can be granted.

4. Plaintiff shall submit within eleven days from the date of this Order a Second Amended Complaint that complies with this Order. The failure to comply with the directions in this Order may result in dismissal of this case with prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 12, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record